NOT DESIGNATED FOR PUBLICATION

No. 118,491

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GARY MICHAEL GILBERT,
*Appellant*.

MEMORANDUM OPINION

Appeal from Saline District Court; RENE S. YOUNG, judge. Opinion filed March 22, 2019. Affirmed.

*Christina M. Kerls*, of Kansas Appellate Defender Office, for appellant.

*Anna M. Jumpponen*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, for appellee.

Before POWELL, P.J., LEBEN, J., and KEVIN BERENS, District Judge, assigned.

PER CURIAM:  A jury convicted Gary Michael Gilbert of multiple felony and misdemeanor charges resulting from an attempted traffic stop. The district court also convicted him of several traffic infractions from the same incident and sentenced him to a total of 94 months in prison. Gilbert appeals, claiming (1) there was insufficient evidence presented to find him guilty of aggravated battery on a law enforcement officer or failing to remain at the scene of an injury accident; (2) the jury was improperly instructed; and (3) the district court violated his constitutional rights by using his prior convictions to increase his sentence. Finding no error by the district court, we affirm.

1

In the afternoon on November 23, 2016, Salina Police Officer Samuel Lada was running traffic enforcement when he saw Gilbert pass, driving 41 mph in a 30 mph zone. Lada turned around and activated his lights and sirens. He saw Gilbert run a red light before finally pulling over.

When Lada introduced himself and explained why he had pulled Gilbert over, he asked Gilbert for his driver's license. Gilbert responded that he did not have one at the time. Gilbert further informed Lada that he did not have time and needed to get to the hospital to see his girlfriend. Lada asked Gilbert his girlfriend's last name. Gilbert replied that he did not know because they had only recently started dating. Lada became suspicious of Gilbert and asked him to turn off his vehicle. Gilbert repeatedly stated, "I do not have time for this." Lada then commanded Gilbert, "Sir, you're going . . . to turn off the vehicle right now." Gilbert maintained he did not have time and started to drive off.

Lada reached inside the vehicle toward the steering wheel with his left hand and grabbed onto Gilbert's jacket collar with his right hand. As Lada reached into the vehicle, Gilbert shoved his left arm out the window as if to shove Lada's hands away. While running alongside the vehicle, Lada grabbed Gilbert's left forearm and collar area. Gilbert abruptly hit his brakes only seconds after taking off, which allowed Lada to regain his footing and reach in toward Gilbert's chest area. Out of his peripheral vision, Gilbert saw a "black figure" approach and hit his side mirror. He "freaked . . . out" and drove off. As Gilbert took off, Lada let go and rolled away from the vehicle. From the fall, Lada suffered several cuts to his arms and knees, a swollen wrist, and a torn uniform. Lada explained he had grabbed onto Gilbert because he seemed suspicious and he did not know what Gilbert's intentions were. Lada had hoped that if he had hold of Gilbert, he

2

would stop and get out of the vehicle as instructed. As Gilbert drove off, Lada saw him run a stop sign. Lada provided dispatch with a description of Gilbert and his vehicle.

After Gilbert left the scene, other officers attempted to stop his vehicle. Gilbert failed to stop and led officers on a high-speed chase through the streets of Salina. At one point Gilbert drove through a yard and damaged a fence. Eventually, Gilbert stopped his vehicle, exited the same, and surrendered to law enforcement.

At trial, Gilbert contended that he did not knowingly cause harm to Lada because he did not know Lada had been attached to his vehicle when he attempted to flee the traffic stop. He asserted he was stressed because he had just found out his girlfriend was in the hospital and had no information about her condition. He was panicky at the time of the stop but never intended or knowingly tried to harm Lada. In his opening statement, Gilbert did not dispute any of the other behaviors, only the element of knowingly harming Lada. In his closing arguments, Gilbert said he was absolutely willing to take responsibility for his bad choices and he agreed to accept those consequences. However, he vehemently denied that he used his vehicle and knowingly tried to harm Lada.

The jury convicted Gilbert of aggravated battery on a law enforcement officer; fleeing or attempting to elude a police officer; reckless driving; two counts of driving while his license was suspended; two counts of no proof of liability insurance; interference with law enforcement/obstruction of official duty; criminal damage to property; driving a motor vehicle upon or across real or personal property of another, intentionally damaging; and failure to stop and remain at the scene of an injury accident. The district court found the evidence also supported findings of guilt for speeding; speeding too fast for conditions; two counts of improper lane change/failure to signal; failure to maintain a single lane; three counts of stop sign violation; and two counts of improper turn or use of turn lane.

3

At sentencing, the district court determined Gilbert had a criminal history score of D and sentenced Gilbert to 94 months in prison with 36 months of postrelease supervision.

Gilbert timely appeals.

I.     DID THE STATE PRESENT SUFFICIENT EVIDENCE FOR THE JURY TO FIND GILBERT GUILTY OF (A) AGGRAVATED BATTERY AGAINST A LAW ENFORCEMENT OFFICER AND (B) FAILING TO REMAIN AT THE SCENE OF AN INJURY ACCIDENT?

Gilbert contends the State failed to prove beyond a reasonable doubt that he knowingly caused bodily harm to Lada. He claims Lada's reaching into his vehicle as he drove away was the cause of the injury to the officer. He further asserts that he was unaware that Lada had grabbed onto his vehicle as he fled and he could not have anticipated that Lada would grab onto his vehicle as he drove off.

> "'When sufficiency of the evidence is challenged in a criminal case, the standard of review is whether, after reviewing all the evidence in a light most favorable to the prosecution, the appellate court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt. Appellate courts do not reweigh evidence, resolve evidentiary conflicts, or make witness credibility determinations.' [Citation omitted.]" *State v. Chandler*, 307 Kan. 657, 668, 414 P.3d 713 (2018).

It is only in rare cases where the testimony is so incredible that no reasonable fact-finder could find guilt beyond a reasonable doubt that this court will reverse a guilty verdict. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

4

A.    *Aggravated Battery Against a Law Enforcement Officer*

Gilbert's first contention is one of causation of the injuries to Lada. He argues he did not cause the contact between his vehicle and Lada; therefore, he is not responsible for injuries to Lada. "The elements of a crime are . . . 'the actus reus, mens rea, and causation—that the prosecution must prove to sustain a conviction.' In Kansas, 'all crimes are statutory and the elements necessary to constitute a crime must be gathered wholly from the statute.' [Citations omitted.]" *State v. Thacker*, 48 Kan. App. 2d 515, 517, 292 P.3d 342, *rev. denied* 298 Kan. 1208 (2013). K.S.A. 2018 Supp. 21-5413(d)(3)(A) states that aggravated battery against a law enforcement officer is "knowingly causing, with a motor vehicle, bodily harm" to a law enforcement officer. Therefore, the State had to prove that Gilbert knowingly caused injury to Lada.

Our Supreme Court recently discussed causation in a homicide case.

"Causation in a criminal case has two core elements: cause-in-fact and legal causation. Cause-in-fact requires proof that but for the defendant's conduct, the result would not have occurred. Legal causation limits a defendant's liability to the reasonably foreseeable consequences of his or her conduct. *State v. Arnett*, 307 Kan. 648, 655, 413 P.3d 787 (2018); see *State v. Anderson*, 270 Kan. 68, 77, 12 P.3d 883 (2000) . . . .
. . . .
". . . Time and time again, we have held that a cause-in-fact chain between a criminal act and a resulting homicide remains intact so long as the latter links of the chain are reasonably foreseeable given the act in question. One of the ways the foreseeability chain can be broken is when an extraordinary event supersedes and becomes the sole cause of the victim's death. By extraordinary, we simply mean unforeseeable." *State v. Wilson*, 308 Kan. 516, 522-23, 421 P.3d 742 (2018).

The same causation analysis would be applicable in this case. Gilbert's first contention fails because Lada's conduct of reaching into the vehicle was foreseeable.

Lada conducted a legal vehicle stop during which he could have used reasonable force in carrying out such an investigatory detention. See *Schreiner v. Hodge*, 55 Kan. App. 2d 50, 69, 407 P.3d 264 (2017). Gilbert does not challenge the validity or scope of the traffic stop. He claims he merely drove forward and, if Lada had not reached in, the vehicle never would have touched him. Though Lada acknowledged that he had not been trained to reach into a vehicle window, he had been trained to respond quickly to a perceived threat to the community. It is foreseeable that an officer may attempt to forcibly remove a driver who fails to exit a vehicle after a lawful command is given to do so. It is also foreseeable that an officer may attempt to prevent the same driver from leaving the scene of a stop by grabbing the driver or reaching into the vehicle. It is also foreseeable that an officer would receive bodily harm from either being dragged by the moving vehicle or falling from it.

Gilbert does not contest that it was reasonably certain Lada would have sustained bodily harm from either being dragged by or falling from the car. Therefore, sufficient evidence exists that Gilbert's continued driving, knowing that Lada had hold of him or the vehicle, caused Lada to fall or let go resulting in bodily harm to Lada.

Aggravated battery against a law enforcement officer under K.S.A. 2018 Supp. 21-5413(d)(3)(A) is knowingly causing bodily harm with a motor vehicle to a uniformed or properly identified state, county, or city law enforcement officer engaged in the performance of his or her duties. Gilbert challenges the evidence supporting the element of having acted "knowingly." According to K.S.A. 2018 Supp. 21-5202(i), one acts knowingly with respect to both one's conduct and the result of the conduct. Therefore, the State had to prove that Gilbert was aware of the nature of his conduct or the existing circumstances and he was aware that his conduct would have reasonably resulted in bodily harm. In *State v. Hobbs*, 301 Kan. 203, 211, 340 P.3d 1179 (2015), the Kansas Supreme Court determined that the Legislature intended knowingly, as used in K.S.A. 2018 Supp. 21-5413, to mean that the defendant "was aware that his or her conduct was

6

reasonably certain to cause the result." The Supreme Court also determined that the State did not have to prove the defendant intended the specific harm, only that the defendant knew some bodily harm was a reasonably certain result. 301 Kan. at 212.

The State presented video evidence of the incident that indicates Gilbert knew Lada latched onto the vehicle as he began to drive off. Though the incident occurred very quickly, both Lada's bodycam and dashcam recorded the incident. In Lada's bodycam recording, at the 1:26 mark, Gilbert begins to drive away. As he accelerates, the video shows Lada's left hand reach into the vehicle toward the steering wheel as Gilbert shoves his left hand out of the window as if to push Lada away from him. At the 1:29 mark, the video shows that when Gilbert slowed down, Lada grabbed Gilbert's left forearm with his left hand and Gilbert's jacket collar with his right hand. At that point, Lada was next to the side mirror, looking back toward Gilbert in the driver's seat. Lada then grabbed toward Gilbert's chest as Gilbert accelerated again. Lada rolled away from the vehicle at the 1:32 mark. From the dashcam video, it is clear that after Gilbert accelerated then hit his brakes, Lada stood beside the window with both arms inside the vehicle.

The recordings are sufficient to show that Gilbert knew Lada remained at his window even after driving several seconds, and a rational fact-finder could conclude Gilbert knew that bodily harm to Lada was reasonably certain to result if he kept driving while Lada was holding onto him or his car. From the video showing Gilbert's attempts to push Lada away, a reasonable jury could infer he knew Lada was attached to him or his vehicle. The State presented sufficient evidence for a jury to find Gilbert guilty beyond a reasonable doubt of aggravated battery against a law enforcement officer.

B.    *Failing to Remain at the Scene of an Injury Accident*

Gilbert argues the State failed to produce sufficient evidence that he knew he had been involved in an accident, so the jury could not have convicted him of failing to

7

remain at the scene of an injury accident. Gilbert maintains he did not know that Lada had attached to his vehicle as he left the traffic stop.

"General criminal intent is a necessary element of leaving the scene of an injury accident under K.S.A. 2011 Supp. 8-1602. Accordingly, the State must allege and the instructions must include the element that the defendant intentionally, knowingly, or recklessly left the scene of an injury accident." *State v. Heironimus*, 51 Kan. App. 2d 841, Syl. ¶ 2, 356 P.3d 427 (2015). If the State proves intentional conduct, then it has also proven knowing and reckless conduct. See K.S.A. 2018 Supp. 21-5202(b), (c).

Gilbert contends he did not know he had been involved in an accident. However, the evidence, as discussed above, shows that he battered Lada with his vehicle. The video indicates Gilbert attempted to push Lada away from his moving vehicle. It also shows that Lada fell from the moving vehicle. Gilbert did not stop to check on Lada but, rather, fled the scene. Therefore, sufficient evidence exists for a rational fact-finder to find beyond a reasonable doubt that Gilbert acted intentionally, knowingly, or recklessly.

Gilbert also claims that even if he knew Lada had been attached to his vehicle, he did not know that sequence of events constituted being involved in an accident that required him to stop. Additionally, he does not deny that if he had been aware of the circumstances, his conduct would have reasonably resulted in bodily harm to Lada. Despite his contention that he was merely trying to flee from a traffic stop, the evidence supports a conclusion that Gilbert knew he battered Lada with his vehicle and should have remained at the scene. Therefore, the State presented sufficient evidence for Gilbert's conviction for failure to remain at the scene of an injury accident.

8

II.    WAS THE DISTRICT COURT'S FAILURE TO INSTRUCT THE JURY OF ALL ELEMENTS OF FAILING TO REMAIN AT THE SCENE OF AN INJURY ACCIDENT REVERSIBLE ERROR?

Gilbert contends that the district court erred when instructing the jury on the elements of failing to remain at the scene of an injury accident. Gilbert complains jury instruction No. 15, which provided the elements for failure to stop and remain at the scene of an injury accident, was clearly erroneous because it omitted the element of the culpable mental state. Because the State concedes that caselaw clearly requires the jury instruction for failing to remain at the scene of an injury accident to include an instruction for the culpable mental state, we need not analyze whether error occurred. However, the State maintains that the instruction was not clearly erroneous.

"When analyzing jury instruction issues, we follow a three-step process:

"'(1) determining whether the appellate court can or should review the issue, *i.e.*, whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits of the claim to determine whether error occurred below; and (3) assessing whether the error requires reversal, *i.e.*, whether the error can be deemed harmless.' [Citation omitted.]" *State v. McLinn*, 307 Kan. 307, 317, 409 P.3d 1 (2018).

At the second step, appellate courts consider whether the instruction was legally and factually appropriate, using an unlimited review of the entire record. 307 Kan. at 318.

At the third step—determining reversibility of an error—we typically apply the clear error standard when a party fails to object to a jury instruction in trial. 307 Kan. at 318; see K.S.A. 2018 Supp. 22-3414(3). Quoting *Neder v. United States*, 527 U.S. 1, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999), our Supreme Court held:

"Under the *Neder* test, 'where a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such

9

that the jury verdict would have been the same absent the error, the erroneous instruction is properly found to be harmless.' 527 U.S. at 17. Stated another way, the reviewing court 'asks whether the record contains evidence that could rationally lead to a contrary finding with respect to the omitted element.' 527 U.S. at 19." *State v. Daniels*, 278 Kan. 53, 62, 91 P.3d 1147, *cert. denied* 543 U.S. 982 (2004).

"[I]f the record contains no evidence contesting the omitted element, the omission is harmless." *Heironimus*, 51 Kan. App. 2d at 852 (citing *Daniels*, 278 Kan. at 62).

Gilbert merely asserts that we must reverse because a district court's failure to instruct a jury on all essential elements is clearly erroneous, citing *State v. Crawford*, 247 Kan. 223, 795 P.2d 401 (1990). In *Crawford*, the Kansas Supreme Court found clear error when the district court failed to inform the jury of the essential element that distinguished aggravated burglary from simple burglary and reversed Crawford's conviction for aggravated burglary because the instructions only permitted conviction for simple burglary. 247 Kan. at 227-28. *Crawford* is distinguishable because the instructions only permitted conviction of a lesser crime; here, the conduct outlined in the instruction matches that of the charged crime.

While the district court has a duty to inform the jury of every essential element of a charged crime, not every instance of failure to do so warrants reversal. See *Heironimus*, 51 Kan. App. 2d at 852-53. The State had the burden of proving that a jury properly instructed on all elements could have found Gilbert had the requisite mental state and convicted him. See 51 Kan. App. 2d at 850, 853. Here, Gilbert did not contest the charge of failing to remain at the scene of an injury accident at trial. Therefore, he did not contest having committed the offense "knowingly." Further, the overwhelming evidence supports that Gilbert knowingly failed to remain at the scene of an injury accident.

The State points out that the injury accident from which Gilbert fled was the aggravated battery against Lada. The State convincingly argues that because the jury

determined Gilbert knew or reasonably should have known he caused bodily harm to Lada with his vehicle, it is implausible to argue that the jury would have determined he was unaware of the injury when he left the scene. We agree with the State that the jury's conclusion of Gilbert's knowledge of the aggravated battery would extend to his knowledge of the injury accident. The jury instruction error was harmless as it would not have affected the outcome of the trial.

III.    DID THE DISTRICT COURT VIOLATE GILBERT'S CONSTITUTIONAL RIGHTS BY USING HIS PRIOR CONVICTIONS TO INCREASE HIS SENTENCE?

Gilbert argues the district court violated his constitutional rights as recognized in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 435 (2000), when it sentenced him based upon a criminal history that had not been proven to a jury beyond a reasonable doubt. Gilbert concedes that the Kansas Supreme Court has already decided this issue against him but raises it to preserve the issue for federal review. See *State v. Fisher*, 304 Kan. 242, 264, 373 P.3d 781 (2016); *State v. Ivory*, 273 Kan. 44, 45-48, 41 P.3d 781 (2002); see also *State v. Watkins*, 306 Kan. 1093, 1093-94, 401 P.3d 607 (2017) (reaffirming *Ivory*). Because there is no indication that our Supreme Court is departing from this position, we are duty bound to follow it. See *State v. Hall*, 298 Kan. 978, 983, 319 P.3d 506 (2014). The district court properly used Gilbert's criminal history to establish his sentence.

Affirmed.

11